IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 1:21CR00151-1 SNLJ | |
| | ) | |
| SAMUEL L. GILLAM, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant, SAMUEL L. GILLAM, through his attorney and submits this memorandum in support of a variance below the Guideline range - down to a term of 120 months. This Court's range of options is limited only by the five-year mandatory minimum and the twenty-year ceiling set by Congress. Congress has concluded that there will be cases that while serious, warrant a sentence as low as five years in prison.

There are principled reasons justifying a variance. First, the defense moves for a variance based on the statutory charging decision made by the United States; receipt of child pornography (which carries a mandatory minimum of 5-years), versus possession of child pornography (which carries no mandatory minimum) which produces unwarranted sentencing disparity. Secondly, the defense is asking the Court to vary down due to the major flaws of USSG §2G2.2, which produces a considerable level increase in Mr. Gillam's offense level resulting in a guideline sentence that is greater than necessary to achieve the goals of sentencing. 18 U.S.C. Sec. 3553(a). Thirdly, the defense moves for a downward

variance based upon Mr. Gillam's future likelihood of continued imprisonment, possibly for the remainder of his life. The individual grounds are more fully discussed below.

The sentencing goals of 3553(a) can be achieved by a term of imprisonment shorter than that called for by the guidelines.  Such a harsh sentence should be saved for only the worst offenders.

## **INTRODUCTION**

The Supreme Court has firmly instructed that the sentencing court "may not presume that the Guidelines range is reasonable" but "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007).  The court must "frame[ ] its final determination in line with 18 U.S.C. § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 111 (2007)

Notably, the Supreme Court has authorized downward variances in cases where the Sentencing Commission has not acted "in the ordinary case," such that the guideline range is not determined based on empirical data and national experience, guided by a professional staff with appropriate expertise. *Kimbrough*, at 109 (involving crack cocaine guidelines).  The Court in *Gall* likewise noted that "not all of the [g]uidelines are tied to [ ] empirical evidence." *Gall*, 552 U.S. at 47 (2007).

Where a Guideline does not reflect the careful study of the Sentencing Commission, it is likely not a "reliable indicator of the Commission's perspective on a fair sentence." *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008).  In those

circumstances the court may vary downward after making an individualized

determination that the Guideline would yield an excessive sentence. *Spears v. United

States*, 555 U.S. 261, 265 (2009).  But the Court may go further, and categorically reject a

Guideline on policy grounds-in other words, when the Court finds that the Guideline

consistently yields sentences greater than necessary to achieve the purposes of § 3553(a)

and not simply based on an individualized determination that they yield an excessive

sentence in a particular case." *Spears,* 264, 267 (discussing the holding in *Kimbrough* that

"district courts are entitled to vary from the crack cocaine Guidelines in a mine-run case

where there are no 'particular circumstances' that would otherwise justify a variance from

the Guidelines' sentencing range")*; United States v. Vandebrake,* 679 F.3d 1030, 1039-40

(8th Cir. 2012) (affirming categorical rejection of Guideline for antitrust offenses).[1]

## I.     The United States' Charging Decision Contributes to Unwarranted Sentencing Disparities.

Mr. Gillam was charged with the receipt of child pornography which carries a 5-

year mandatory minimum sentence. However, a receipt charge is almost indistinguishable

from the charge of possession of child pornography, which carries no mandatory minimum.

Defense counsel questions how one can possess child pornography without receiving it

(unless a person produced the pornography, which is and should be punished more

severely). In short, the offenses are essentially identical, but with very different statutory

penalty ranges.

---

[1] *see also United States v. Henderson,* 649 F.3d 955, 960 (9th Cir.2011); *United States v. Grober,* 624 F.3d 592, 599–600 (3d Cir.2010); *United States v. Corner,* 598 F.3d 411, 415 (7th Cir.2010) (en banc); *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir.2008) (en banc); *United States v. Rodriguez,* 527 F.3d 221, 227 (1st Cir.2008).

The Sentencing Commission has pointed out the underlying offense conduct in the typical receipt case is indistinguishable from the typical possession case. U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021), at 2 ("2021 Report).[2]  The Commission recommended in 2012 that Congress "align the statutory penalties for receipt offenses and possession offenses.[3]  The Commission found that "as a practical matter, the conduct underlying a receipt or possession charge is materially identical."[4] The Commission noted that "widespread sentencing disparities existed among similarly situated offenders sentenced under the non-production child pornography guideline based largely on whether they were charged with receipt or possession."[5]

Comparing "receipt offenders" to "possession offenders" under the Guidelines, the Commission specifically found that in FY 2019:

> The only difference between the two groups of offenders is the starting point of their guideline calculation based on the count(s) of conviction. Applying §2G2.2 resulted in a guideline range of 78 to 97 months for the possession offenders and 97 to 121 months for the receipt offenders. Thus, the guideline provides different sentencing ranges for two groups of offenders who seemingly engaged in the same conduct.

> There are considerable differences in how these similarly situated possession and receipt offenders were sentenced. The average sentence for these receipt offenders (81 months) was 34 months longer than the similarly situated possession offenders (47 months). Taken together, the overall spread of sentences for the 171 similarly situated offenders ranges from probation to 228

---

[2] The full 2021 Report can be found at:
https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

[3] *Id.,* at 2.
[4] *Id.* at 2, 12.
[5] *Id.* at 2

months. This analysis reveals striking sentencing differences both among and between similarly situated possession and receipt offenders.[6]

The Commission found that in FY 2019 the most common possession offenders received a base offense level of 18. The average sentence for defendants convicted of possession of child pornography was 47 months, with the overwhelming majority (81.5%) sentenced below the guideline range.[7]  Notably, sentences ranged from probation to 228 months for these 119 possession offenders, who had the same guideline calculation through application of the same specific offense characteristics and criminal history category.[8]

In contrast, in FY 2019, the most common receipt offender received the same guideline range calculation as the possession offenders analyzed, except the base offense level started at 22 and was reduced by two levels because the actual conduct was limited to receipt of child pornography."[9]  The resulting guideline range for these receipt offenders was 97 to 121 months.[10]

In addition, the 2021 Report also found that those convicted of possession more often engaged in the aggravating conduct of distributing pornography. Specifically, the Commission found that "offenders sentenced for possession actually distributed child pornography (56.8%) at a rate almost three times higher than those sentenced for receipt (21.2%). Therefore, the decision to charge the much harsher receipt offense may not

---

[6] *Id.* at 56.
[7] *Id.* at 54-55.
[8] Id., at 54-55.
[9] *Id.*
[10] *Id.*

always reflect the seriousness of offender conduct relative to distribution."[11]  Mr. Gillam

did not distribute child pornography yet he must serve a minimum five years of

incarceration.

## II.    A Variance is Reasonable in View of the Valid Critique Surrounding the History and Application of USSG 2G2.2 and Because it Overstates the Seriousness of a mine-run offense like Defendant's Resulting in a Sentence Greater Than Necessary to Meet the Purposes of Sentencing in 18 U.S.C. Sec. 3553(a).

In the wake of *Kimbrough* and its progeny, e.g., *Spears*, numerous district courts

have questioned the child pornography guidelines on policy grounds.  USSG 2G2.2 has

been the subject of intense criticism.   Courts have explained that the child pornography

guideline enhancements are not a reliable indicator of the Sentencing Commission's

perspective on a fair sentence because they fail to reflect the institutional expertise of the

Commission, are not based on careful study and empirical data, are in many cases

duplicative, and fail to distinguish between aggravated and mine-run cases.  See *United*

*States v. Beiermann*, 599 F.Supp.2d 1087 (N.D. Iowa 2009)(collecting cases); *United States*

*v. Phinney*, 599 F.Supp. 1037 (E.D. Wis. Feb. 20, 2009)(collecting cases); *United States v.*

*Henderson*, 649 F.3d 955, 960-63 (9th Cir. 2011).  Though 2G2.2 originated with the

Commission, its content has been repeatedly diverted from the Commission's judgment by

congressional mandates.  "... § 2G2.2 is the result of 2 decades worth of Congressional

directives[12] – at times actively opposed by the Commission – that have continually

---

[11] *Id.* at 51.

[12] In the PROTECT Act of 2003, Congress directly amended the guidelines by increasing the number of enhancements in the child pornography guidelines and limited sentencing judges' ability to depart below the guideline ranges in child pornography cases.  See U.S. Sentencing Comm'n. The History of the Child Pornography Guidelines, 38-40 (Oct. 2009);

ratcheted up penalties and piled on enhancements." *United States v. Abraham*, 944

F.Supp.2d 723, 728 (D. Neb. 2013); *see generally* Troy Stabenow, Deconstructing the Myth

of Careful Study: A Primer on the Flawed Progression of the Child Pornography

Guidelines (Jan. 2009)(detailing the various congressionally mandated revisions to the

child pornography guidelines and their effect on "ordinary" defendants).[13] "The real

problem, as courts across the country have recognized, is that § 2G2.2 simply does not

work." *Id.* citing *United States v. Grober,* 624 F.3d at 607-10; *Henderson*, 649 F.3d at 960-

63; *United States v. Dorvee*, 616 F.3d 174, 184-86 (2nd Cir. 2010); *United States v. Diaz,*

720 F.Supp.2d 1039, 1041–42 (E.D.Wis.2010) (collecting cases); *United States v. Zauner*,

688 F.3d 426, 431 (8th Cir. 2012)(J. Bright, concurring and noting child pornography

guidelines eliminate any meaningful distinction between least and most culpable offenders

and that courts are free to disagree with them); *United States v. Burns*, 834 F.3d 887 (8th

Cir. 2016)(noting district court "may disregard the child pornography sentencing

guidelines on policy grounds…"); *United States v. Price,* 2012 WL 966971, at *11 (C.D. Ill.

Mar. 21, 2012)(noting similar issues with 2G2.1 and departing downward); *United States

v. Cruikshank.*, 667 F.Supp.2d 697, 702 (S.D.W.Va. 2009).

Rather than sensibly differentiating between offenders based on more or less

culpable conduct and dangerousness, a series of amendments to § 2G2.2 by Congress often

results in a sentence for the average offender at or close to the statutory maximum, i.e.,

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf

[13] Available at Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (ussc.gov).

twenty years.  See, e.g., *United States v. Hanson*, 561 F.Supp.2d 1004, 1011 (E.D.Wis. 2008) (noting that defendant appeared fairly typical and yet "found himself in a guideline range that exceeded the statutory maximum at the high end").  The guideline consists of nearly universal application of a series of outdated enhancements. Section 2G2.2 operates in such a blanket manner that it fails to distinguish between more and less severe offenders let alone with regard for the nature of their offense or their personal characteristics.

Together, the five enhancements applied in the majority of child pornography cases mean that before acceptance of responsibility is factored in, the § 2G2.2 receipt, possession, and distribution offender has an adjusted offense level of 37.  With no prior criminal history, that equates to a 210-262 month Guideline range, rapidly approaching and exceeding the statutory maximum of 240 months "based solely on sentencing enhancements that are all but inherent to the crime of conviction." *Abraham*, 944 F.Supp.2d at 729 [internal citations omitted]; see also *United States v. Millette*, Docket No. 2:16CR00004-NT, 2020 WL 7502454, at *5 n.5 (D. Me. Dec. 21, 2020).  Mr. Gillam's total offense level 35 reflects the application of these omnipresent enhancements, resulting in additional offense levels. PSR ¶¶29-30.   The end result, a guideline range of 292-365 months adjusted to the statutory maximum 240 months, is a severe advisory sentencing range that must be rejected as inconsistent with the principles of individualized sentencing called for in 18 U.S.C. § 3553(a) and 28 U.S.C. § 991(b)(1)(B).  Accordingly, Mr. Gillam is requesting a sentence of 10 years imprisonment, a compromise acknowledging

and given credence to his criminal history category while simultaneously taking into consideration the inflation resulting from application of the enhancements.

The defense asks the Court to vary below the guideline range to a sentence of 10 years due to the application of USSG §§ 2G2.2. These enhancements that were only intended to apply to the most serious child pornography offenses were routinely applied to most non-production child pornography offenders like Mr. Gillam."[14] They lead to a sentence greater than necessary to achieve, contrary to § 3553(a).

### a. The Child Pornography Guidelines Are Routinely Rejected by Federal Courts Around the Country.

Judicial opinions from across the country acknowledge the flaws in the Guideline. See *United States v. Jenkins*, 854 F.3d 181, 188-91 (2d Cir. 2017)(reversing a child pornography sentence for relying too heavily on § 2G2.2 and its "all-but- inherent" enhancements); *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) (finding sentence substantively unreasonable after explaining that the enhancements "are all but inherent to the crime of conviction," and noting that the guideline range for an offense involving actual contact was likely to be lower than a guideline range under § 2G2.2); *United States v. Olhovsky,* 562 F.3d 530, 549-553 (3 Cir. 2009); *United States v. Morace*, 594 F.3d 340, 345 (4th Cir. 2010) (collecting cases and discussing nationwide trend of downward departures and variances in child pornography cases); *United States v. Childs*, 976 F.Supp.2d 981, 982 (S.D. Ohio 2013) ("There is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed."); *United States v.*

---

[14] *Id.* at 2.

*Beiermann*, 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009) (collecting cases); *United States v. Abraham*, 944 F. Supp.2d 723, 731 (D. Neb. 2013) ((varying downward based on policy disagreement with 2G2.2 recognizing that the Guideline for non-production cases does not help the sentencing court to distinguish between run-of-the-mill offenders and the worst of the worst and noting that the Court has a duty to make such distinctions at every sentencing); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) (upholding below-range sentence where the district court articulated reasons for disagreeing with guideline range calculated under § 2G2.2); *United States v. Catlett*, Case No. 15-20482, 2016 WL 6246564 (E.D. Mich. 2016) (imposing sentence well below guideline range when defendant was diagnosed as pedophile); *United States v. Stieren*, Case No. 8:12-cr-423, 2013 WL 5539359 (D. Neb. 2013) (imposing mandatory minimum sentence and noting that the guideline range is not reliable indicator of a fair sentence); *United States v. Cameron*, 1:09-cr-00024, 2011 WL 890502 (D. Maine Mar. 11, 2011) (imposing 192-month sentence where the defendant went to trial and had a guideline range of 262 to 327 months); *United States v. Cruikshank*, 667 F. Supp. 2d 697 (S.D.W.V. 2009) (declining to impose guideline range sentence in light of the overly harsh guidelines); *United States v. McElheney,* 630 F. Supp. 2d 886 (E.D. Tenn. 2009) (sentencing defendant below the guideline range); *United States v. Klear*, 3 F. Supp. 3d 1298, 1307 (M.D. Ala. 2014) (concluding that the Sentencing Commission report "presents exactly the basis for a reasoned case for disagreeing with the policy judgments behind the child pornography guidelines" (quotation omitted)). In *Klear*, the Court varied downward to impose a nine-year sentence. Id. at 1311; See *United States v. Henderson*, 649 F.3d 955, 960, 962 (9th Cir.2011) (concluding "district judges must enjoy the same liberty to

10

depart from [the child pornography Guidelines] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough* " because "[m]ost of the revisions [to § 2G2.2] were Congressionally-mandated and not the result of an empirical study").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. Congressional directives shaped the current child pornography guideline, and "[t]he § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines' projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Dorvee,* 616 F.3d at 186. In *Vazquez v. United States*, 558 U.S. 1144 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including Congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." Brief of United States in *Vazquez v. United States*, 2009 WL 542302 at *11 (Nov. 16, 2009) (No. 09-5370). As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress." *United States v. Michael*, 576 F.3d 323, 328 (6th Cir. 2009)(Congressional directives simply "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it."); *United States v. Grober*, 624 F.3d 592, 600-01 (3rd Cir. 2010)(applying abuse of discretion review to a district court's policy-based downward variance from§ 2G2.2 because, "the Commission did not do what 'an

11

exercise of its characteristic institutional role' required – develop § 2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress; *id* at 608-09 ("Congress, of course…may enact directives to the Commission which the Commission is obliged to implement," but *Kimbrough* permits district courts to vary even where a guideline provision is a direct reflection of a congressional directive").

This Court may thus properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, *see Kimbrough*, 552 U.S. at 109-10 consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical date of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." *Kimbrough, at 109-10; Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.

**b.  Relevant Sentencing Statistics**

Federal courts have often sought the guidance of the Sentencing Commission's sentencing statistics when seeking to implement the directives in 18 U.S.C. § 3553(a).  A review of relevant data from the Sentencing Commission's Judiciary Sentencing Information (JSIN) tool which provides nationwide sentencing data on similarly situated defendants is instructive.  This data confirms that the child pornography guideline has lost significant persuasive impact with judges and with prosecutors as the participants in the federal criminal justice system who conscientiously labor to produce fair and reasonable

sentences that are tailor made to the unique circumstances of the child pornography offense and child pornography offenders.

In the context of the on-going multi-source recognition of the fundamental flaws of the child pornography guideline, as well as the Sentencing Commission sentencing data, there is no compelling reason to believe that the guideline range in Mr. Gillam's case, as determined by § 2G2.2, reflects and/or comports with the sentencing goals enumerated in 18 U.S.C. § 3553(a).  On the contrary, a guideline sentence would be inconsistent with "[C]ongress' basic statutory goal—a system that diminishes sentencing disparity— [that] depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction." *United States v. Booker* 543 U.S. 220, 250 (2005). (emphasis in original).

Mr. Gillam is remorseful for his actions and the impact they have had on others.

Courts are often asked to speculate or predict the future danger of individuals who stand before them.  This Court should look to what we do know about Mr. Gillam.  Mr. Gillam's probation in 17JE-CR00650-01 is pending revocation PSR ¶¶95, he has pending charges in both Bay County, Florida and Iron County, Missouri for conduct not relevant to the instant offense PSR ¶¶96 which consecutive sentences may be imposed and charges pending in Iron County, Missouri which is relevant conduct to the instant offense PSR ¶¶97. In this context, a sentence of 120 months is sufficient but not greater than necessary to achieve the sentencing goals.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Samuel Gillam respectfully requests that the Court vary from the advisory guideline range and impose a sentence of 120 months (10 years) imprisonment.

Respectfully submitted,

/s/ *Cira R. Duffe*
Cira R. Duffe
Attorney at Law
101 E. Columbia St.
Farmington, Missouri 63640
Telephone: (573) 756-8082
E-mail: Duffe@hdp-law.com

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon John Nicholas Koester, Jr., Assistant United States Attorney.

/s/ *Cira R. Duffe*
Cira R. Duffe
Attorney for Defendant

14